## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

TWIN CITY DIE CASTINGS
COMPANY,

Civil No. 03-3069 (JRT/FLN)

Plaintiff,

v.

YAMAZEN, INCORPORATED and
BROTHER INTERNATIONAL
CORPORATION (U.S.A.),

**MEMORANDUM OPINION
AND ORDER ON MOTIONS FOR
SUMMARY JUDGMENT**

Defendants.

Katie C. Pfeifer, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402 and Thomas L. Nuss, **HORMEL FOODS CORPORATION**, 1 Hormel Place, Austin, MN 55912, for plaintiff.

Edward J. Underhill and Gary Vist, **MASUDA FUNAI EIFERT & MITCHELL**, One East Wacker Drive, Suite 3200, Chicago, IL 60601 and Terrance J. Wagener, **KRASS MONROE**, 8000 Norman Center Drive, Suite 1000, Minneapolis, MN 55437, for defendant Yamazen, Incorporated.

Kevin P. Hickey and Jessica Mason Pieklo, **BASSFORD REMELE, PA**, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402, for defendant Brother International Corporation (U.S.A.).

Plaintiff Twin City Die Castings Company ("Twin City") brought suit against defendant Yamazen, Inc. ("Yamazen") alleging claims of breach of contract, breach of express warranty, breach of implied warranty of merchantability, and breach of implied

warranty of fitness for a particular purpose against Yamazen and against defendant Brother International Corporation (U.S.A.) ("Brother")[1] alleging claims of breach of express warranty and breach of implied warranty of merchantability.[2]  The claims relate to the purchase of three machines and related tooling manufactured by Brother and imported and sold to plaintiff by Yamazen.  Defendants move for summary judgment on all claims.  For the following reasons, the Court grants Yamazen's motion with respect to part of the breach of contract claim, grants Brother's motion with respect to the breach of implied warranty of merchantability claim, and denies the motions in all other respects.

## BACKGROUND

In November or December 2000, Twin City entered into a purchase agreement with Yamazen to purchase three Brother TC-32A machines and related tooling that were designed to produce crankcases.  The machines were delivered in January 2001.  Brother transferred the machines to Yamazen Corporation,[3] who exported them to defendant Yamazen, who then sold them to Twin City.

---

[1] Brother Industries, Ltd., apparently a Japanese sister company to defendant Brother, manufactured the machines at issue in this case.  The precise contours of the relationship between these two companies are not clear to the Court.  As defendant Brother's motion does not rest on any distinction between the two companies, the issue does not appear to impact resolution of this motion.

[2] Initially, Twin City asserted a claim of violation of the Minnesota Consumer Fraud Act against both defendants and claims of breach of contract and breach of implied warranty of fitness for a particular purpose against Brother.  Twin City informed the Court that it voluntarily dismisses these claims.  Accordingly, the Court will dismiss these claims.

[3] Yamazen Corporation appears to be a Japanese sister company to defendant Yamazen. The precise contours of the relationship between the two companies are not clear to the Court.

(Footnote continued on next page.)

The purchase agreement explicitly included a "full manufacturer's 1 year warranty on machine and 2 years on controller." (Ex. A to Vist Aff.) Effective January 16, 2001, Yamazen's standard Terms and Conditions of Sale included the following limitation of warranty:

> It is understood that YAMAZEN is an independent distributor and not the manufacturer of any of the equipment it sells. That all warranties offered are those of the manufacturers of the equipment, and not YAMAZEN. YAMAZEN assigns to Buyer, all warranties, if any, received by it from the manufacturer. That YAMAZEN has no obligation or liability arising from the manufacturer's warranty. That third party dealers are not agents of YAMAZEN and YAMAZEN has no obligation or liability arising from any warranty made by said third party dealer. Buyer further represents and acknowledges that YAMAZEN has not made any representations or warranties, direct or indirect, express or implied as to any manner whatsoever, including without limitation, the design or condition of any item of equipment, its merchantability or its liability, or its fitness for any particular purpose, the quality of the material or workmanship of any item of equipment.

(Ex. 14 to Pfeifer Aff.) Defendants maintain that the purchase agreement included these limitations; Twin City denies that it ever received or knew about these limitations.

The TC-32A model was a relatively new model at the time Twin City purchased the machines. In December 2000, Brother determined that approximately 10% of the TC-32A machines had a constructive failure in the tool clamping mechanism, and developed a retro-fit for the machines to address the issue. According to Brother, the tool clamp retro-fit did not change any published specifications such as the tool change cycle time, and was not intended to have any impact on production speed. Although Yamazen

_____
(Footnote continued).

As defendant Yamazen's motion does not rest on any distinction between the two companies, the issue does not appear to impact resolution of this motion.

typically performed all maintenance and service on the machines it sold, a Brother Representative Manager, Mickey Tsukada, came to Twin City's Minneapolis facility to install the retro-fit kit. The installation was delayed several months due to the parties' schedules.

The TC-32A machines are fitted with a water coolant pump. Twin City's machines were fitted with a 250 p.s.i. water coolant pump. When Tsukada visited the Twin City facility to install the retrofit kit, he recommended that the machines run a 1000 p.s.i. pump rather than the 250 p.s.i. pump. Subsequently, the 1000 p.s.i. pump was installed.

According to Twin City, it engaged in detailed discussions concerning the intended use of the machines with Yamazen employees and purchased the TC-32A machines with certain specific components based on the advice and representations of the Yamazen staff. Twin City maintains that Yamazen told it that the machines would meet the specifications contained in a sales brochure for the machines. The brochure states that the machines achieve a .7 second tool-to-tool change time and a 2.2 second chip-to-chip change time. (Ex. G to Vist Aff.) However, the brochure adds the qualification that "[w]hen using large diameter tools, the tool change sequence differs." According to Yamazen, this qualification indicates that the machines may not achieve the listed change times if large diameter tools are used.

Twin City contends that Yamazen knew what the machines were going to be used for and what tooling and timing plaintiff required, and recommended the TC-32A machines, promising that they would meet the .7 and 2.2 second performance standards

and that the 250 p.s.i. coolant system would be sufficient. One of the three machines, however, did not function as allegedly promised, causing Twin City to incur substantial extra costs in order to meet the large crankcase order that the machines were purchased to fill.[4] Specifically, the change times were slower than .7 and 2.2 seconds. Twin City maintains that the machine was defective, that defendants knew the machine was defective before delivering it, and that defendants failed to correct the problem. Twin City contends that the problematic machine functioned properly after the retro-fit and new pump were installed.

Defendants argue that the machines were not defective, but that Twin City used them in a manner outside of the product specifications. Specifically, according to defendants, Twin City used a 2.5 diameter tool, despite the fact that the specification lists a maximum 2.2 diameter. Further, defendants contend that Twin City settled on the particular machines at issue on their own, with little input from Yamazen or anyone else.

## ANALYSIS

Plaintiff asserts claims of breach of contract, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose against Yamazen and claims of breach of express warranty and breach of implied warranty of merchantability against Brother. Both defendants move for summary judgment. The Court will address each of Twin City's claims in turn.

---

[4] The other two machines performed as expected.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Id*.

## I.     Breach of Contract Against Yamazen

On November 8, 2000, Yamazen offered to sell Twin City three Brother TC-32A Drill and Tap Centers for $161,000 each. The offer, which is contained in a three-page "Investment Summary" detailed the standard features included on the machines, certain requested options, and the terms and conditions of sale. (*See* Ex. J to Pieklo Aff.; Ex. A to Vist Aff.) Twin City accepted the offer, thereby forming a contract. Twin City asserts that, under the contract, Yamazen agreed to be responsible for the one-year manufacturer's warranty, but failed to provide required service. Twin City also contends that Yamazen's representations that the machines would perform to particular specifications were part of the contract, and that Yamazen breached the contract by

providing machines that were unable to meet the specifications.  Yamazen asserts that there was no breach of the contract because Yamazen delivered to Twin City exactly the machines that were described in the purchase agreement.

"Generally, construction of a written contract is a question of law for the district court."  *Knudsen v. Transp. Leasing/Contract, Inc.*, 672 N.W.2d 221, 223 (Minn. Ct. App. 2003).  "Absent ambiguity, the terms of a contract will be given their plain and ordinary meaning and will not be considered ambiguous solely because the parties dispute the proper interpretation of the terms."  *Id.*  Ordinarily, a court will not look to extrinsic evidence to interpret the terms of an unambiguous written contract.  *Alpha Real Estate Co. v. Delta Dental Plan*, 664 N.W.2d 303, 312 (Minn. 2003).  Nevertheless, even where no ambiguity exists on the face of a contract, a court may consider extrinsic evidence to determine whether the written contract fully integrates the terms of the parties' agreement.  *Id.*; *see also Beech Transp. v. Critical Care Servs., Inc.*, 2001 WL 1182707, at *1 (Minn. Ct. App. Oct. 9, 2001).

Page three of the "Investment Summary," which is entitled "Terms and Conditions," states: "Warranty:  Full manufacturer's 1 year warranty on machine and 2 years on controller."  (Ex. A to Vist Aff.)  The Court finds that this language clearly and unambiguously indicates that the manufacturer, not the seller, of the machine has provided the warranty.  Contrary to Twin City's argument, the fact that the manufacturer may have arranged for the seller to provide warranty-based service does not somehow transfer the manufacturer's responsibility for its warranty to the seller.  *State v. Patten*, 416 N.W.2d 168, 171 (Minn. Ct. App. 1987) ("[T]he mere sale of the goods together with

transmission of a manufacturer's warranty does not bind an agent. The agent must itself adopt the manufacturer's warranty to be bound by its term."). Therefore, the Court will grant summary judgment to Yamazen on Twin City's claim that Yamazen breached the contract by allegedly failing to provide warranty service.

However, the Court will not grant summary judgment to Yamazen on Twin City's claim that Yamazen breached the contract by providing machines that did not meet the product specifications and alleged performance guarantees. Although the "Investment Summary" language lacks any mention of the product specification or any performance guarantees, the Court finds that the sales brochure, product specifications, and Twin City's testimony regarding representations by Yamazen employees create a genuine issue of material fact as to whether the "Investment Summary" constitutes a fully integrated contract between the parties and, if not, what the terms of the contract were intended to be. Specifically, the Court finds that a reasonable jury could conclude that the parties intended to include the specifications and performance guarantees in the contract and that Yamazen breached the contract by failing to provide a machine up to the task. Accordingly, summary judgment is not appropriate with respect to this aspect of the claim.

## II.     Breach of Express Warranty

Twin City asserts that Yamazen and Brother, through the sales brochure, the product specifications, and Yamazen's employees, expressly warranted that the machines would achieve certain performance standards, namely change times, in producing the

crankcases.  The elements for a claim of breach of express warranty are: (1) the existence of a warranty; (2) breach of the warranty; and (3) causation of damages.  *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 52-53 (Minn. 1982).  When a seller makes "any affirmation of fact or promise" about a product, an express warranty arises that the product will conform to that promise. Minn. Stat. § 336.2-313(1)(a) (2002).  It is not necessary that the promise be characterized as a warranty. *Id*. § 336.2-313(2); *see also Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 393 (Minn. Ct. App. 2004).

The Court finds that genuine questions of material fact remain with respect to (1) whether an express warranty arose out of the sales brochures, specifications sheet(s), and representations by Yamazen employees; (2) the terms of any such warranty; and (3) whether Twin City relied on such a warranty to its detriment.  Therefore, summary judgment is not appropriate on Twin City's claim that Yamazen and Brother breached an express warranty created by the sales brochures, specifications sheet(s), and employee representations.

## III.    Breach of Implied Warranty of Merchantability

An implied warranty of merchantability provides that the product is fit for its ordinary and intended use.  Minn. Stat. § 336.2- 314(2)(c) (2002).  An implied warranty of merchantability arises automatically when the product is a "good" and the seller is in the business of furnishing the product to the consumer. *Id*. § 336.2-314(1).

The machines in this case qualify as goods, and Yamazen is in the business of selling them to consumers.  Therefore, an implied warranty of merchantability arose

between Twin City and Yamazen.  Twin City contends that the ordinary and intended use for the machines was to manufacture crankcases accurately within a certain time frame, and that the machines could not do that.  This argument is supported by Twin City's assertions that Yamazen knew Twin City's precise plans for the machines prior to the sale of the machines.  Yamazen asserts that the ordinary and intended use is limited by the machine specifications, namely that oversized tools not be used.  In light of the above, the Court finds that there is a question of material fact as to what the definition of the ordinary and intended use of the machines and whether the machines delivered were fit for that use.  Summary judgment in favor of Yamazen, therefore, is not appropriate on this claim.  However, as Brother did not sell the machines to Twin City, Brother is entitled to summary judgment on this claim.  *See* Minn. Stat. § 336.2-314 (implied warranty of merchantability arises between buyer and seller of goods).

## IV.    Breach of Implied Warranty of Fitness for a Particular Purpose Against Yamazen

An implied warranty of fitness for a particular purpose exists when a plaintiff shows that: (1) the seller had reason to know of the buyer's particular purpose; (2) the seller had reason to know that the buyer was relying on the seller's "skill or judgment to furnish appropriate goods;" and (3) the buyer actually relied.  *Willmar Cookie Co. v. Pippin Pecan Co.*, 357 N.W.2d 111, 115 (Minn. Ct. App. 1984).  As above, the Court finds that questions of material fact remain as to whether Yamazen knew Twin City's particular purpose for the machines and that Twin City was relying on Yamazen for an appropriate recommendation in light of the particular purpose, and whether Twin City

actually relied on Yamazen's representations and advice.  Therefore, summary judgment is not appropriate on this claim.

This case will be placed on the Court's next available trial calendar.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendant Yamazen, Incorporated's Motion for Summary Judgment [Docket No. 37] is **GRANTED IN PART and DENIED IN PART.**   The motion is **GRANTED** with respect to the portion of claim 1 relating to the manufacturer's warranty and claim 5 and **DENIED** in all other respects.

2.      Defendant Brother International Corporation's motion for summary judgment [Docket No. 27] is **GRANTED IN PART and DENIED IN PART**. The motion is **GRANTED** with respect to counts 1, 3, 4, and 5 and **DENIED** with respect to count 2.


DATED:   July 6, 2005                              _____ s/ John R. Tunheim _____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                  United States District Judge